

**FILED**

May 11 2023, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Casey Farrington
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Freida Starks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 11, 2023

Court of Appeals Case No.
22A-CR-2190

Appeal from the Marion Superior
Court

The Honorable Charnette Garner,
Judge

The Honorable Ronnie Huerta,
Magistrate

Trial Court Cause No.
49D35-2002-F6-6747

**Opinion by Judge Bradford**
Judges Riley and Kenworthy concur.

**Bradford, Judge.**

# Case Summary[1]

On the evening of February 7, 2020, Freida Starks and her cousin visited a Little Caesar's restaurant in Indianapolis. Starks's ex-boyfriend, Daryl Coleman, and his new partner, Gina Watford, were at the same Little Caesar's at the same time. As Starks and Watford approached the restaurant, Starks attacked Watford. After Coleman and Starks's cousin had separated the two, Starks entered the restaurant. Starks returned minutes later carrying a handgun, which she pointed in Watford's direction and fired, missing Watford but striking her car. The State charged Starks with Level 6 felony criminal recklessness ("Count I"), Level 6 felony pointing a firearm ("Count II"), and Class A misdemeanor criminal mischief, which the State later dropped. After a trial, a jury convicted Starks as charged, and the trial court sentenced her to 730 days of incarceration, with 640 days suspended to probation on each count. Starks argues that her convictions for pointing a firearm and criminal recklessness violate Indiana's double jeopardy prohibition. We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

---

[1] We held oral argument in this case on April 11, 2023, at Wabash College. We commend counsel for the quality of their presentations and extend our gratitude to the students, administration, faculty, and staff of Wabash College for their assistance and hospitality.

[2] On the night of February 7, 2020, Starks and her cousin visited a Little Caesar's restaurant in Indianapolis. As it happened, Coleman and Watford were visiting the same restaurant at the same time. Starks and Watford had "a very bad relationship" that included a history of fighting. Tr. Vol. II p. 216. Starks and Watford approached the restaurant at the same time and "bumped heads right there at the intersection of the door going into Little Caesar's." Tr. Vol. II p. 209. At that point, Starks "attacked" Watford and the two "fell back on top of [Watford's] car." Tr. Vol. II pp. 209–10. Once Coleman and Starks's cousin had separated the two women and stopped the fight, Starks entered the restaurant. Watford stayed outside to "get [her]self together." Tr. Vol. II p. 210.

[3] A few minutes later, Starks emerged from the restaurant carrying a handgun. Starks and Watford continued "having cross words back and forth" and "before [Watford] knew it," Starks had raised her handgun and fired. Tr. Vol. II p. 212. Coleman had been standing between Starks and Watford and trying to get Watford into the car when Starks fired her handgun. Starks's bullet missed Watford and struck her car. Coleman and Watford drove off and called the police.

[4] The State charged Starks with Count I, Count II, and Class A misdemeanor criminal mischief. The State subsequently dismissed the misdemeanor charge. After a trial, a jury convicted Starks of Counts I and II. The trial court sentenced Starks to 730 days of incarceration, with 640 days suspended to probation, on each count to be served concurrently.

# Discussion and Decision

[5] Starks argues that her conviction for pointing a firearm should be vacated because pointing a firearm, as charged here, is a lesser-included offense of criminal recklessness and that both convictions stem from the same act. For its part, the State argues that neither conviction is factually included in the other and that each conviction stems from a separate and distinct act.

[6] Whether two convictions constitute double jeopardy is a question of law that we review de novo. *Carranza v. State*, 184 N.E.3d 712, 715 (Ind. Ct. App. 2022) (citing *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020)). Where a single act violates multiple statutes, we use a three-step analysis to determine whether the convictions constitute substantive double jeopardy. *Wadle*, 151 N.E.3d at 247. First, we must review the statutes to assess whether "the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication[.]" *Id.* at 248. Second, if the statutes are unclear or silent on that point, then we must determine whether one offense is included in the other, either inherently or as charged. *Id.* Third, if an offense *is* included, then we must consider the underlying facts to determine whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249. Both parties acknowledge that the statutes at issue do not contemplate multiple punishments, so our inquiry starts with step two.

## A.   Included Offenses

Starks contends that, as charged, her conviction for pointing a firearm is a lesser-included offense of criminal recklessness.  An offense is included when it

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168.  Starks claims that "[f]actual inclusion is obvious" by comparing the charging information:

> **COUNT I**
>
> On or about February 7, 2020, FREIDA A STARKS did recklessly with a deadly weapon, to Wit:  a handgun or gun, perform an act that created a substantial risk of bodily injury to Gina Watford and/or Daryl Coleman, that is:  by firing a gun at or in the direction of where Gina Watford and/or Daryl Coleman were standing;
>
> **COUNT II**
>
> On or about February 7, 2020, FREIDA A STARKS did knowingly point a firearm, to-wit:  a handgun or gun, at Gina Watford[.]

Appellant's Br. p. 11; Appellant's App. Vol. II p. 41. Starks points out that the State alleges that she (1) committed criminal recklessness by "firing a gun at or in the direction of" Watford "and/or" Coleman, and (2) committed pointing a firearm by "point[ing] a firearm […] at Gina Watford[.]" Appellant's App. Vol. II p. 41. To fire a gun in someone's direction, Starks argues, necessarily means that the shooter must point the gun at that person; therefore, Count II is factually included in Count I. For its part, the State argues that neither offense is factually included in the other based on the mens rea element and that the physical acts of pointing and shooting a firearm are different.

[8] In *Thurman v. State*, 158 N.E.3d 372 (Ind. Ct. App. 2020), we found pointing a firearm and criminal recklessness to be included offenses of attempted murder. In that case, Thurman appealed his convictions for pointing a firearm and criminal recklessness after he had pointed his gun at two different persons and fired at both, arguing that under the facts of his case, pointing a firearm and criminal recklessness were included offenses of attempted murder. *Id*. at 373–74. We acknowledged that "criminal recklessness may constitute an included offense of pointing a firearm[.]" *Id*. at 377. Thus, we turned to the facts underlying Thurman's offenses and noted that the charging informations did not indicate that the facts of the crimes were different and that the prosecutor failed to delineate which acts related to which count. *Id.* at 378. During closing, the prosecutor stated simply that Thurman "pulls that gun […] points that gun at him, and pulls the trigger." *Id*. As a result, we vacated Thurman's

convictions for pointing a firearm and criminal recklessness, concluding that those charges were included in his attempted murder charges. *Id*. at 380.

[9] Likewise, in *Bracksieck v. State*, 691 N.E.2d 1273, 1275 (Ind. Ct. App. 1998), we concluded that, under certain circumstances, pointing a firearm and criminal recklessness "are the same offense for double jeopardy purposes and the defendant cannot be convicted of both without violating both the state and federal prohibitions against double jeopardy." In that case, the State charged Bracksieck with Class D felony pointing a firearm and Class D felony criminal recklessness after he had pointed a gun at a victim's head and pulled the trigger, although the weapon had failed to discharge. *Id*. at 1274. We reasoned that there "is no situation in which pointing a loaded firearm at another person does not also create a substantial risk of bodily injury to that person." *Id*. at 1275. We concluded that "when a firearm is involved, the elements of both statutes consist of (1) knowingly or intentionally (2) pointing a firearm at another person." *Id*. Thus, under those circumstances, "pointing a firearm, as a class D felony, and criminal recklessness, as a class D felony, are the same offense for double jeopardy purposes[.]" *Id*.

[10] In further support of her argument, Starks draws our attention to *Harris v. State*, 186 N.E.3d 604 (Ind. Ct. App. 2022). In that case, Harris was convicted of Level 5 felony intimidation with a deadly weapon and Level 6 felony pointing a firearm. *Id*. at 607. We determined that the two offenses were factually included because "the evidence presented at trial to support the offense of intimidation with a deadly weapon was the same as the evidence to support

pointing a firearm." *Id.* at 611. In other words, "Harris's act of pointing the firearm at [the victim] was the factual basis for meeting the drawing or using a deadly weapon element and convicting Harris of intimidation with a deadly weapon." *Id.* at 612.

[11] Based on the facts and circumstances of this case, we agree with Starks that Counts I and II are factually included as charged. As Starks notes, "the State did not prove the two charges by different facts." Appellant's Br. p. 11. Notably, a "prosecutor cannot secure two convictions for the same act using the exact same evidence[.]" *Phillips v. State*, 174 N.E.3d 635, 647 (Ind. Ct. App. 2021). The State relied on the testimony of two different witnesses telling a single story: Starks "raised, pointed, and fired her gun." Tr. Vol. III p. 47. During the State's opening statement, it claimed that Starks "pointed a firearm in the general direction of, uh, [Watford] while [Coleman] was somewhere in the middle between the two, and she fired." Tr. Vol. II p. 190. The State further explained that Starks had exited the restaurant with her handgun, "point[ed] it at [Watford] with [Coleman] right in between[,]" and "pull[ed] the trigger." Tr. Vol. II p. 191. Similar to the prosecutor in *Bracksieck*, the prosecutor in this case failed to distinguish Counts I and II when she argued in closing arguments that "the Defendant doesn't even deny that she raised, pointed, and fired her gun." Tr. Vol. III p. 47.

[12] Moreover, looking specifically at the charging information, we have little hesitation in concluding that the two offenses are factually included. For example, Count I alleges that Starks "perform[ed] an act that created a

substantial risk of bodily injury to Gina Watford and/or Daryl Coleman, that is: by firing a gun at or in the direction of where Gina Watford and/or Daryl Coleman were standing[.]" Appellant's App. Vol. II p. 41. Count II alleges that Starks "did knowingly point a firearm, to-wit: a handgun or gun, at Gina Watford[.]" Appellant's App. Vol. II p. 41. As we concluded in *Bracksieck*, there "is no situation in which pointing a loaded firearm at another person does not also create a substantial risk of bodily injury to that person." *Bracksieck,* 691 N.E.2d at 1275. As charged here, the State's proof of Count I established all the material elements of Count II, thus making Count II factually included because Count I only required the additional element of Starks firing her handgun in Watson's and Coleman's direction. Ind. Code § 35-31.5-2-168(1). Beyond requiring proof of the additional element of firing the handgun, Counts I and II essentially only differ in that "a lesser kind of culpability[,]" *i.e.* recklessness, is required to prove Count I. Ind. Code § 35-31.5-2-168(3). Concluding that offenses qualify as included offenses, we now proceed to the final step of the *Wadle* analysis.

## B. Single Transaction

[13] In step three, we ask whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249. "If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, 'included' in the other." *Id*. The State argues that each conviction stems from a separate act. Specifically, the

State asserts that each conviction relates to a separate act, *i.e.*, discharging a firearm for one and pointing a firearm for the other, and, as such, does not violate Indiana's prohibition on double jeopardy. We disagree.

[14] Instead, we agree with Starks that the facts presented at trial establish a single crime. Again, *Thurman* is instructive. In that case, Thurman pointed his gun and fired in quick succession. The prosecutor stated that

> the gun immediately comes out and immediately pointed right at his face. And […] he didn't pull it out and point the gun and say, "Get out of there, I'm taking your SUV." He fired…. He runs to the front of the vehicle while [the victim is] trying to slide down as low as he can so he's not a dead man, and he fires again.

*Id*. at 379. Based upon the prosecutor's description and the record, we concluded that "Thurman's actions […] were so compressed in terms of time, place, singleness of purpose, and continuity of action that they constitute one continuous transaction." *Id*.

[15] Likewise, Starks's actions of pointing and shooting the firearm "were so continuous as to constitute a single transaction[,]" not two separate and distinct acts. Appellant's Br. p. 13. Watford testified that Starks had "raised a gun and pointed at me and shot it." Tr. Vol. II p. 213. In fact, the action occurred so quickly that "before [Watford] knew it, [Starks] raised a gun at me and shot at me." Tr. Vol. II p. 212. Like the episode in *Thurman*, we conclude that Starks's conduct was "so compressed in terms of time, place, singleness of

purpose, and continuity of action that they constitute one continuous transaction." *Wadle*, 151 N.E.3d at 255.

[16] As a result, we conclude that Starks's convictions for Counts I and II violate Indiana's prohibition on double jeopardy. When a double jeopardy violation occurs, the conviction carrying the lesser punishment should be vacated. *Jones v. State*, 159 N.E.3d 55, 65 (Ind. Ct. App. 2020), *trans. denied*. Where the convictions carry the same sentence, as they do here, we vacate the included offense. *Snyder v. State*, 176 N.E.3d 995, 999 (Ind. Ct. App. 2021) (citing *Spry v. State*, 720 N.E.2d 1167, 1170 (Ind. Ct. App. 1999), *trans. denied*). Thus, Starks's conviction for pointing a firearm should be vacated and her conviction for criminal recklessness should remain.

[17] The judgment of the trial court affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and Kenworthy, J., concur.